LANDRY, Judge.
This appeal by plaintiff, Marcella K. 'Thompson (Appellant), seeks judicial review and reversal of an order of the Louisiana Real Estate Commission (Commission) declaring a six month’s suspension of Appellant’s real estate broker’s license upon finding Appellant guilty of employing unlicensed personnel in the operation of an Apartment Information Service conducted by Appellant in violation of LSA-R.S. 37:1454, subd. A(5), (9), (14) and (15). Both the Commission and lower court found that the type of service being rendered by Appellant’s admittedly unlicensed employees falls within the definition of “real estate salesman” contained in LSA-R.S. 37:1431(4) for which a license is required. We affirm.
The facts are undisputed. Appellant, a licensed real estate broker, maintains an office in which she operates an Apartment Information Service. By agreement with apartment owners and managers, Appellant keeps records on all apartment complexes in the City of Baton Rouge. Appellant has available the location of apartment houses, size of apartments, the amount of rent charged, and other information useful and valuable to persons seeking an apartment. The availability of Appellant’s service is advertised and made known to the public. Appellant’s undeviating practice is to require all prospective tenants to call in per *226 son-at Appellant’s office. All telephone inquirers are informed that no apartment data whatsoever will be furnished them unless they personally apply at Appellant’s place of business. Apartment seekers are furnished detailed information concerning available apartments which appear to best suit their particular needs, desires and ability to pay. When one or more apparently suitable apartments are decided upon, the client is referred to the manager or managers of the apartments selected either by a referral card or by being personally escorted to the apartment complex and introduced to the manager by Appellant or one of Appellant’s employees. If the client is personally escorted, upon arrival the client is introduced to the manager who then proceeds to show the apartment and conduct all further negotiations necessary to confect a lease. Neither Appellant nor her employees ever show an apartment or sign a lease. When necessary, however, Appellant’s services include making arrangements on behalf of the tenant for connection or restoration of utilities such as telephone, electricity, gas and water, and assisting the tenant with any moving problems the tenant may encounter. For such services, Appellant receives a commission of one-half of the first month’s rent, payable by the owner after the tenant has occupied the apartment for three months. An employee who handles a prospective tenant receives one-third of Appellant’s commission.
In the conduct of her business, Appellant employed Mrs. Robert M. Tuminello from January 11, 1971 to February 1, 1971. She also engaged Mrs. Grace Jones from November, 1969 to February, 1971. In addition, Appellant hired her daughter, Candace Thompson Mosely in January, 1971, Mrs. Mosely being still in Appellant’s employ. To the knowledge of Appellant, neither of said employees were licensed as real estate salesmen.
During the terms of their employment, Mrs. Tuminello and Mrs. Jones received telephone calls, discussed apartments with clients who came to the office, and placed the clients in contact with apartment managers by either personal introduction or means of an introductory card. As a result of the activities conducted by these employees, Appellant received numerous commissions for apartments rented by persons who availed themselves of the services of Appellant’s office. Mrs. Mosely, although engaged primarily as a bookkeeper, also handled several clients who rented apartments for which Appellant received commissions.
The applicable statute, LSA-R.S. 37 :- 1454, reads, in pertinent part, as follows:
“A. The commission may suspend or revoke any license issued under the provisions of this Chapter if a licensee is guilty of performing or attempting to perform any of the following acts:
******
(9) Paying or offering to pay any commission or valuable compensation of any kind to anyone not possessed of a license in the transaction of a real estate or business chance deal; or
******
(14) Any licensed broker found guilty of employing any person and allowing said person to perform any of the acts set forth in the definitions of a real estate salesman, whether an initial applicant or a transfer, before said person is properly licensed as a real estate salesman with said broker”.
Real estate salesman, as used in Section 1454, subd. A(14), 'above, is defined in LSA-R.S. 37:1431(4) as follows:
“ ‘Real estate salesman’ means any person who for a compensation or valuable consideration is employed either directly or indirectly by a licensed real estate broker to sell or offer to sell, or buy or offer to buy, or to negotiate the purchase or sale or exchange of real estate, or to lease or offer to lease, rent or offer for rent any real estate for others as a whole or partial vocation.”
*227 Appellant, invoking the rule of strict interpretation applicable in cases of this nature, contends subject statute does not encompass the type of activity engaged in by Appellant in this instance. More precisely, Appellant relies upon Wanless v. Louisiana Real Estate Board, La.App., 140 So.2d 429, which applied the strict interpretation rule to the statute in question. Appellant contends her employees’ actions do not fall within the definition of real estate salesman as employed in Section 1431, above, since, manifestly, none of said employees ever sold or attempted to sell real estate. As regards renting or leasing or offering to rent or lease, Appellant contends the activities of said employees do not fall into either category since the employees admittedly have no authority to sign leases and do not do so, all leases being signed by the managers of the respective apartment complexes.
Appellant points out that Section 1431(4) does not prohibit unlicensed employees from negotiating for leases, but only from leasing or offering to lease real property. In this connection, Appellant contends that even if negotiations for leases were prohibited, the most that could be said of her employees’ actions is that they constituted the beginning of negotiations and not negotiations themselves. In short, Appellant maintains she furnished an information service only, and that she neither sells, nor rents, nor offers to sell or rent real estate. Appellant argues that the Commission and trial court erred in holding in effect that the activities in question constitute an offer to rent or lease property.
We find the services rendered by Appellant constitute an integral part of a rental process utilized by those owners and managers who list property with Appellant. In legal effect, the managers and owners were offering to lease through the facilities furnished by Appellant. The facts warrant the finding that Appellant was not a vendor of information, but the agent of the apartment managers and owners, it being Appellant’s function to bring prospective tenants to the attention of her various principals. It appears Appellant is not compensated solely for furnishing information to potential lessees. She is remunerated only by the owner, and then only when a lease is confected and maintained in effect for a period of at least three months. The fact that Appellant does not “negotiate” the actual terms of the leases or sign leases on behalf of owners is a matter of no moment. Appellant seeks and solicits tenants for her principals, she furnishes detailed information, and brings prospects to the attention of those whom she represents. Such services form an integral part of the leasing procedure and clearly constitute an offer to lease, tendered on behalf of the owners, and falls within the purview of the statute which proscribes offering to lease without a license.
The Commission points out that the trial court affirmed its decree and ordered the suspension to commence May 31, 1972. Additionally, the Commission notes that the suspension decreed by the trial court has never commenced due to the suspen-sive appeal taken herein by plaintiff and, as a result, the ordered suspension has never become effective. We are in agreement with the Commission’s suggestion that to render meaningful its determination and the affirmation thereof by the trial court, this court should decree said suspension effective upon the finality of this court’s judgment.
It is ordered, adjudged and decreed that the order of the Louisiana Real Estate Commission, and the judgment of the trial court suspending the real estate broker’s license of plaintiff, Marcella K. Thompson, d/b/a Apartment Information Service, for a period of six months be and the same is hereby affirmed and amended in that said period of suspension is ordered to commence upon the finality of the judgment of this court; all costs of these proceedings to be paid by Appellant, Marcella K. Thompson, d/b/a Apartment Information Service.
Amended and affirmed.